**Rafael Guillermo ALMONTE**

v.

**Janet RENO, Attorney General, et al.**

**No. Civ.A. 98–11753–RGS.**

United States District Court,
D. Massachusetts.

Nov. 19, 1998.

James C. Dragon, Lowell, MA, for Rafael Guillermo Almonte, plaintiff.

Frank Crowley, Immigration & Naturalization Special Assistant U.S. Attorney, Boston, MA, for Steven J. Farquharson, defendant.

*MEMORANDUM OF DECISION AND ORDER ON A PETITION FOR A WRIT OF HABEAS CORPUS*

STEARNS, District Judge.

The material facts underlying the petition are not in dispute and can be quickly summarized. On December 30, 1993, the petitioner, Rafael Guillermo Almonte, pled guilty in Worcester Superior Court to the unlawful distribution of cocaine. On March 23, 1994, while confined on the ensuing sentence of incarceration, Almonte was served with an Order to Show Cause by the Immigration and Naturalization Service (INS), as the prelude to a deportation hearing.[1] After several scheduling miscues, Almonte appeared on January 30, 1996, before an Immigration Judge. Almonte indicated his intention to apply for discretionary relief from deportation under section 212(c) of the Immigration and Naturalization Act, 8 U.S.C. § 1182(c). The Immigration Judge ordered that a completed Form I–191 Waiver of Inadmissability be filed with the INS by May 31, 1996. The form was filed on May 29, 1996. On April 24, 1996, the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 100 stat. 1214 (1996) (AEDPA), came into effect. Section 440(d) of AEDPA significantly enlarged the category of criminal convictions that disqualify an alien from seeking section 212(c) relief to include Almonte's offense. On November 6, 1996, the Immigration Judge ruled Almonte deportable as having been convicted of a controlled substances violation, 8 U.S.C. § 1251(a)(2)(B)(i), and as having been convicted of an aggravated felony, 8 U.S.C. § 1251(a)(2)(A)(iii). The Immigration Judge also ruled that section 440(d) of AEDPA had taken effect immediately upon its enactment, thus rendering Almonte ineligible for section 212(c) relief. On March 31, 1998, the Board of Immigration Appeals (BIA) dismissed Almonte's appeal. Almonte was taken into custody by the INS on August 18, 1998. He filed this petition in the district court on August 24, 1998. On August 27, 1998, the court entered a stay of deportation pending a resolution of Almonte's petition. A hearing was held on November 6, 1998, and addition-

---

1. Petitioner is a native and citizen of the Domini-    can Republic.

al briefing was submitted thereafter by the parties.

## DISCUSSION

On May 15, 1998, the First Circuit Court of Appeals decided *Goncalves v. Reno,* 144 F.3d 110 (1st Cir.1998), reversing this court's determination that an otherwise deportable alien's right to seek discretionary relief under section 212(c) had been extinguished by the enactment of section 440(d) of AEDPA. Goncalves, who was deportable for reasons similar to the present petitioner, had filed an application for section 212(c) relief prior to AEDPA's enactment, and on the date that AEDPA came into effect, was prosecuting an appeal of its denial before the BIA. Acting pursuant to a directive of the Attorney General,[2] the BIA dismissed Goncalves' appeal (along with all other pending section 212(c) applications). Relying on the "principles" of *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the First Circuit concluded that in the absence of a clear statement from Congress that section 440(d) was intended to be retroactive, "[t]he Attorney General's application of the new AEDPA restrictions takes away a form of relief that, while discretionary, is plainly substantive, and so implicates *Landgraf's* presumption against retroactivity." *Goncalves,* 144 F.3d at 128.[3] The Court emphasized that its holding was narrow. "We have … determined, through a careful reading of AEDPA's text, confirmed by its legislative history, that Congress did not intend AEDPA § 440(d) to apply retroactively *to persons in Goncalves' position.*" 144 F.3d at 134 (emphasis added).

This would seem to conclude the debate but for one important factual difference between Goncalves' case and Almonte's. Almonte, unlike Goncalves, had not perfected his section 212(c) application prior to AEDPA's effective date. True, he had made known to the INS his intention to pursue such relief, and had obtained the permission of an Immigration Judge to do so, but his completed application crossed INS's portal only after AEDPA was enacted. The question presented then is this: is the holding of *Goncalves* confined to persons precisely in Goncalves' position, that is, aliens who had filed I–191 forms with the INS prior to April 24, 1996, the day AEDPA was signed into law?

One district court in this circuit has answered the question directly. In *Wallace v. Reno,* 24 F.Supp.2d 104, 1998 WL 735966 (D.Mass.), Judge Gertner held that section 440(d) should not apply to aliens whose deportable status arose from a pre-AEDPA plea of guilty to an offense that AEDPA now deems a section 212(c) disqualification. Judge Gertner's opinion is lengthy, but her essential argument rests on the statutory practice in some states, among them Massachusetts, of requiring judges during a plea colloquy to inform a defendant that a conviction may have immigration consequences.[4]

At the moment of indictment, then, a non-citizen criminal defendant would most likely have been informed of and had good reason to consider the immigration consequences of a guilty plea. If the attorney had fulfilled her obligations, a defendant such as Wallace should have factored into those considerations his eligibility for § 212(c) relief and that a majority of those who sought it had succeeded.

There is thus a direct and meaningful connection between the operation of AEDPA's new rule barring § 212(c) relief to many alien criminal offenders and a past

---

**2.** See *Matter of Soriano,* Int. Dec. 3289, 1996 WL 426888 (Op. Att'y Gen. June 27, 1996), holding that the restrictions on section 212(c) relief imposed by § 440(d) of AEDPA were intended by Congress to be applied retroactively.

**3.** But see *Kolster v. INS,* 101 F.3d 785, 789 (1st Cir.1996)("The availability of purely discretionary relief does not create substantive rights in otherwise deportable criminal aliens, nor does the availability of judicial review of denial of that discretionary relief.")

**4.** M.G.L. c. 278, § 29D, does not require that a judge ascertain that a defendant has been informed by his lawyer of the possibility of deportation. The statute in fact forbids the judge from making any inquiry as to the defendant's immigration status. It requires only that the judge give a general immigration warning to all defendants pleading guilty.

event—those same offenders' voluntary decision to waive their right to a trial and plead guilty. AEDPA's bar to § 212(c) relief attached new legal consequences to the guilty pleas, after the fact. To apply those consequences now would offend principles of fair notice and respect for reasonable reliance and settled expectations. See *Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483. The presumption against retroactivity therefore applies to bar the application of § 440(d) whose deportability rests on guilty pleas, entered prior to April 24, 1996. Just as the First Circuit held that the Congress may not place additional burdens on Goncalves' completed act of applying for § 212(c) relief, so too it may not place additional burdens on Wallace's completed act—to waive his trial rights and plead guilty.

Id. at 111–12, 1998 WL at *8.

While this approach is clear in its application, it is troubling in several respects. First, it assumes that aliens have a cognizable interest in the availability of section 212(c) relief, which the First Circuit, and other Courts of Appeals, have ruled they do not. See *Kolster*, 101 F.3d at 789. Thus, even assuming that over time defense counsel have as a matter of routine practice advised their alien clients that deportation might be avoided by a section 212(c) waiver,[5] neither that advice nor the availability of a section 212(c) hearing creates any substantive right in an otherwise deportable alien. Id. at 789. Moreover, much of counsel's advice in this regard would be retroactively erroneous in light of the Immigration Act of 1990 (which precludes the Attorney General from granting waivers of deportation to aliens who have served a five year sentence for an aggravated felony). In *Barreiro v. INS*, 989 F.2d 62, 64 (1st Cir.1993), the First Circuit explicitly held that the 1990 restrictions on the availability of section 212(c) hearings, when applied to aliens whose convictions predated the passage of the Immi-

gration Act, did not violate the presumption against retroactivity. The reasons for the holding were two. First, that it was inconceivable (as in this case) that Congress in enacting "so substantial a stricture" would have intended to create a safe haven for large numbers of persons whose past conduct now made them ineligible for section 212(c) relief. The second reason, while not as clearly expressed, was based on the principle, recognized in *Landgraf*, that "a statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, ... or upsets expectations based in prior law." 511 U.S. at 269, 114 S.Ct. 1483. Rather, whether a particular rule operates retroactively must be decided "at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." Id. at 270, 114 S.Ct. 1483. In the context of this case, it is worth remembering that the "relevant past event" targeted by Congress in AEDPA was not the alien's decision to plead guilty, but rather the underlying criminal conduct that made him potentially deportable. To focus on the alien's plea, rather than his crime, is to lose sight of a fundamental point, that AEDPA does not impose a new penalty for the alien's *past* conduct, it rather closes a door to his *future* prospects of remaining in the United States. While there is certainly a connection between the past event (the crime) and Congress's judgment in the matter, the extent of the change in the law is not that great. As the Third Circuit cogently stated in *Scheidemann v. INS*, 83 F.3d 1517, 1523 (3d Cir.1996):

[i]n this case, the consequences of petitioner's criminal conduct were clear at the time of that conduct and they remain unchanged today. He was subject to possible criminal sanctions and deportation. The only relevant change in the law related to the permissible scope of the Attorney Gen-

---

**5.** Competent defense counsel I would expect to do so regularly today. I doubt the practice was common ten or twenty years ago when the enforcement of the immigration laws was more lax. Moreover, I doubt that the uncertain prospect of obtaining such a waiver (according to Judge

Lynch, about half of section 212(c) applications are granted, see 144 F.3d at 128) is a material inducement to many aliens to plead guilty (as opposed to the more tangible and immediate inducement of a lesser prison sentence).

eral's discretion to grant relief from one of those consequences. Like statutes altering the standards for injunctive relief, this change has only a prospective impact. It is not designed to remedy the past but only to affect petitioner's future status with respect to the legality of his presence in the United States ... Given the facts that petitioner's pre–1987 conduct clearly subjected him to deportation as well as criminal sanctions, and that § 212(c), as it then existed, offered relief from the former only at the unfettered discretion of the Attorney General, petitioner does not, and could not, contend that his conduct was undertaken in reliance on the then current version of § 212(c).

At the same time, I agree with Judge Gertner that confining *Goncalves* strictly to its facts, making section 212(c) relief available only to aliens whose petitions had been perfected as of AEDPA's effective date, exalts form over substance, and is susceptible to an inequitable result, such as here, where the petitioner had begun the process of seeking a waiver and had obtained the permission of the Immigration Judge to do so, on or before a date which, as it happened, overlapped the passage of AEDPA. Through no fault of his own, in probable reliance on the Immigration Judge's calendering order, or perhaps because of his counsel's inalacrity, petitioner missed the deadline.[6]

To state why in this case a strict application of *Goncalves* seems unfair is to suggest an equitable answer that is consistent with *Goncalves* and is fair to both the petitioner and to the INS, that is, the bringing within *Goncalves'* sweep not only those aliens whose applications for section 212(c) relief had been perfected as of April 24, 1996, but also those who prior to AEDPA's enactment had given the INS unmistakable notice of their intention to seek such relief either in a writing or in a transcribed proceeding before an Immigration Judge. This reading preserves not only petitioner's right to seek the relief that he had been authorized to pursue by the Immigration Court, but it also addresses the INS's not unreasonable concern that a wholesale extension of *Goncalves* "would wrongly benefit those in deportation proceedings who never had the intent to file for such relief but would now see the opportunity to further delay departure from the United States." Respondent's Supplemental Memorandum, at 3. While the result is open to the criticism that the likelihood of an alien's having made his intention to seek relief known is largely dependent on the vagaries of the commencement of a deportation proceeding,[7] this can also be said about any prosecution where delay by authorities in bringing the action causes a defendant to sleep on his rights.

### ORDER

Because it is undisputed that petitioner had made known to the INS his intention of filing an I–191 Waiver of Inadmissibility prior to the enactment of AEDPA § 440(d), the petition is *GRANTED*. Petitioner's case is *REMANDED* to the Board of Immigration Appeals for a determination on the merits of his application for section 212(c) relief.

SO ORDERED.

---

**6.** I am not suggesting that the government is in any way estopped from advocating for a more strict result because of the Immigration Judge's order. See *United States v. Ven–Fuel, Inc.*, 758 F.2d 741, 761 (1st Cir.1985).

**7.** I assume that few I–191 waiver applications are filed preemptively, although the INS says that there is nothing to prevent it.