Franklyn MATHEWS, Petitioner,

v.

Janet RENO, Attorney General; Doris Meissner, Commissioner of the Immigration and Naturalization Service; Immigration and Naturalization Service; Department of Justice; and Steven Farquharson, District Director, Immigration and Naturalization Service, Respondents.

Pasqualino Turavani, Petitioner,

v.

Janet Reno, Attorney General; Steven Farquharson, District Director, Immigration and Naturalization Service; and Any Other Persons Having the Petitioner in Custody, Respondents.

Pedro Olavo Gomes, Petitioner,

v.

Janet Reno, Attorney General; Doris Meissner, Commissioner of the Immigration and Naturalization Service; Immigration and Naturalization Service; Department of Justice; and Steven Farquharson, District Director, Immigration and Naturalization Service, Respondents.

Fausto Abreu–Santana, Petitioner,

v.

Janet Reno, Attorney General; Doris Meissner, Commissioner of the Immigration and Naturalization Service; Immigration and Naturalization Service; Department of Justice; and Steven Farquharson, District Director, Immigration and Naturalization Service, Respondents.

Nos. Civ.A. 97–12071–PBS, Civ.A. 98–11066–PBS, Civ.A. 98–11183–PBS, Civ.A. 98–11251–PBS.

United States District Court, D. Massachusetts.

May 18, 1999.

Randy Olen, Providence, RI, for Fausto Abreu–Santana, plaintiff.

Randy Olen, Providence, RI, Robert J. Caron, Providence, RI, for Pedro Olavo Gomes, plaintiff.

Prasant D. Desai, Desai & Graves, Boston, MA, for Pasqualino Turavani, plaintiff.

John A. Canavan, III, Dorchester, MA, for Franklyn Mathews, petitioner.

Karen Ann Hunold, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, Frank W. Hunger, John J. Andre, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, Frank Crowley, Immigration and Naturalization Special Assist. U.S. Atty., Boston, MA, David S. Merson, U.S. Atty., Boston, MA, for Janet Reno, Attorney General, Doris Meissner, Immigration & Naturalization Service, U.S. Dept. of Justice, Steven J. Farquharson, defendants.

Frank Crowley, Immigration and Naturalization Special Assist. U.S. Atty, Boston, MA, for Jean R. Oullette, Acting District Director, defendant.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

Petitioners are legal permanent residents ("LPRs") of the United States who have been ordered deported because of their criminal conduct. They challenge determinations by the Board of Immigration Appeals ("BIA") that they are statutorily ineligible for discretionary relief from deportation due to section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, Tit. IV, Subtit. D, § 440(d), 110 Stat. 1214, 1277 (Apr. 24, 1996). Petitioners seek writs of habeas corpus pursuant to 28 U.S.C. § 2241 on the ground that Congress did not intend AEDPA § 440(d) to apply retroactively to aliens in pending deportation proceedings at the time of its enactment.

For the reasons set forth below, the petitions for habeas corpus in the above-captioned cases are *ALLOWED* to the extent of remanding the cases to the BIA for consideration on the merits of whether petitioners are entitled to discretionary relief from deportation.

### FACTS AND PROCEDURAL HISTORY

#### A. Franklyn Mathews

Petitioner Franklyn Mathews has been a LPR since 1975, when he arrived in the

United States from Trinidad at age sixteen. In August 1994, he pled guilty to cocaine trafficking under Massachusetts law, an offense for which he was sentenced to three years to three years and one day in state prison. On March 9, 1995, while Mathews was serving his sentence, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause ("OSC") charging him with deportability pursuant to then-sections 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1251(a)(2)(B)(i), (a)(2)(A)(iii) (1994).[1] Under former INA § 241(a)(2)(B)(i), an alien was deportable if, after entry, he was "convicted of a violation of ... any law or regulation of a State, the United States, or a foreign country relating to a controlled substance." 8 U.S.C. § 1251(a)(2)(B)(i) (1994). Former INA § 241(a)(2)(A)(iii) made an alien deportable if, after entry, he was "convicted of an aggravated felony." *Id.* § 1251(a)(2)(A)(iii). Under INA § 101(a)(43)(B), a drug trafficking crime is an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(B).

At a hearing before an immigration judge ("IJ") on April 9, 1996, Mathews conceded deportability. The IJ indicated, as she had at a prior hearing on November 14, 1995, that Mathews was eligible for relief from deportation under then-section 212(c) of the INA, 8 U.S.C. § 1182(c) (1994), and allowed him until November 29, 1996, to file a section 212(c) application and supporting documentation. Mathews ultimately submitted his application in compliance with the deadline. On April 24, 1996, however, Congress passed the AEDPA. On January 15, 1997, the IJ ordered Mathews deported and, citing AEDPA § 440(d), pretermitted his section 212(c) application on the ground that he was statutorily ineligible for the relief.

The BIA affirmed and entered a final order of deportation on August 18, 1997.

## B. *Pasqualino Turavani*

Petitioner Pasqualino Turavani, a native and citizen of Italy, has been a LPR of the United States since he entered the country in 1966. He has one United States citizen child. In September 1990, he was convicted in federal district court of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(C). The record does not indicate the length of his sentence. On December 11, 1991, the INS issued an OSC charging him with deportability under then-sections 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the INA. At a hearing before an IJ on December 20, 1991, Turavani conceded deportability and requested an opportunity to apply for section 212(c) relief. The IJ granted him until January 31, 1992, to file an application. On February 13, 1992, finding that Turavani's section 212(c) application had been abandoned because it had never been filed, the IJ ordered Turavani deported.

Turavani appealed the IJ's decision to the BIA on July 7, 1992, arguing, among other things, that the IJ had failed to provide him with sufficient time to obtain counsel prior to the application deadline. On October 26 of that year, he also filed a motion to reopen to apply for section 212(c) relief (which the BIA treated as a motion to remand) and attached a completed 212(c) application. The AEDPA was enacted while Turavani's appeal and motion were pending before the BIA. On April 7, 1997, the Board dismissed the appeal, denied the motion, and entered a final order of deportation. Determining that Turavani was statutorily ineligible for relief from deportation due to AEDPA § 440(d), the BIA expressly declined to decide the abandonment issue. Although

---

1. Section 241 of the INA was redesignated as section 237 of the INA by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, Div. C, Tit. III, Subtit. A, § 305(a)(2), 110 Stat. 3009– 546, 3009–598 (Sept. 30, 1996), and has since been transferred by the compilers of the United States Code to 8 U.S.C. § 1227, *see* 8 U.S.C.A. §§ 1251, 1227 (1999).

the Board stated that it was "unnecessary to decide the issue of abandonment," however, it noted as follows:

> We have noted your argument that the Immigration Judge erred when he failed to inquire whether you wanted legal representation upon the withdrawal of your previous counsel. The record reveals that the Immigration Judge granted the motion to withdraw a month before your application was due. We find that you had ample time to obtain counsel prior to the filing deadline of your application. The Immigration Judge properly proceeded when the application was not filed.

Apr. 7, 1997, BIA Decision.

In May 1997, Turavani filed a motion to reopen with the BIA pursuant to the Attorney General's decision in *Matter of Soriano*, Int. Dec. 3289, 1996 WL 426888 (BIA June 27, 1996) (beginning at *16) (allowing aliens who had conceded deportability prior to the AEDPA's enactment "in reliance on the availability of section 212(c) relief" to move to reopen proceedings for the "limited purpose" of contesting deportability). The BIA reopened and remanded his case in June 1997. Turavani failed to appear at his hearing, and on February 10, 1998, the IJ entered an *in absentia* order of deportation. Turavani then filed a motion to reopen to challenge this order. An IJ denied his motion on May 6, 1998.

### C. *Pedro Olavo Gomes*

Petitioner Pedro Gomes arrived in the United States from Cape Verde in 1982. In March 1992, he was convicted in a Rhode Island court of second-degree child abuse of his four-week-old infant. In August 1994, he was convicted under Rhode Island law for receiving stolen goods under $500 in value. The record fails to specify the nature or length of Gomes's sentences. The INS issued an OSC dated November 10, 1994, and later amended, charging Gomes with deportability under then-sections 241(a)(2)(A)(ii) and 241(a)(2)(A)(iii) of

the INA, 8 U.S.C. § 1251(a)(2)(A)(ii), (a)(2)(A)(iii) (1994). Former INA § 241(a)(2)(A)(ii) made an alien deportable if, after entry, he committed "two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor." 8 U.S.C. § 1251(a)(2)(A)(ii) (1994). Under section 101(a)(43)(F) of the INA, 8 U.S.C. § 1101(a)(43)(F), child abuse is a "crime of violence" constituting an aggravated felony. *See* 18 U.S.C. § 16(a) (defining "crime of violence" as "an offense that has as an element the use ... of physical force against the person ... of another"); R.I. Gen. Laws § 11–9–5.3(2) (defining second-degree child abuse as the infliction upon a child of any "serious physical injury").

Gomes first appeared before an IJ on December 27, 1995, but his case was ultimately scheduled to be heard on September 30, 1996. While he was waiting for his hearing, the AEDPA was enacted. At the hearing on September 30, Gomes conceded deportability and expressed a desire to apply for a section 212(c) waiver of deportation. The government moved to pretermit his application on the basis of AEDPA § 440(d), but the IJ denied the government's motion. In December 1996, however, the IJ denied Gomes's section 212(c) application on the merits and ordered him deported. On April 21, 1998, the BIA dismissed Gomes's appeal on the ground that he was statutorily ineligible for the relief under AEDPA § 440(d), and entered a final order of deportation.

### D. *Fausto Abreu–Santana*

Petitioner Fausto Abreu–Santana entered the United States from the Dominican Republic in 1983, as a LPR. He was convicted in March 1995 of possession of cocaine with intent to distribute in violation of Massachusetts law. The record does not reflect the length of his sentence. On June 5, 1995, the INS issued an OSC listing then-sections 241(a)(2)(B)(i) and

241(a)(2)(A)(iii) of the INA as the bases for deportation.

At a hearing before an IJ on January 9, 1996, Abreu–Santana contested his deportability and indicated his intention to apply for a section 212(c) waiver. Finding Abreu–Santana deportable as charged, the IJ set May 31, 1996, as the deadline for the section 212(c) application and scheduled a hearing on the merits. In the meantime, the AEDPA was enacted. Abreu–Santana nonetheless submitted his application on May 28, 1996, in compliance with the IJ's deadline. On April 22, 1997, the IJ ordered him deported and pretermitted his application on the ground that he was no longer statutorily eligible for a waiver. The BIA affirmed the IJ's decision and entered a final order of deportation on June 8, 1998.

## DISCUSSION

### A. *The Section 212(c) Waiver*

Prior to the passage of AEDPA § 440(d), INA § 212(c) authorized the Attorney General to waive deportation for a LPR alien who had a "lawful unrelinquished domicile of seven consecutive years" in the United States, as long as he had not been "convicted of one or more aggravated felonies" for which he had served "a term of imprisonment of at least 5 years." 8 U.S.C. § 1182(c) (1994).[2] Among the favorable equities to be considered by the IJ in determining whether to grant a waiver were the alien's family ties

in the United States, his employment history and property or business ties, his record of service to the community, the length and inception of his residence in this country, and evidence of hardship to the individual and his family likely to result from deportation. *See generally, e.g., Matter of Marin,* 16 I. & N. Dec. 581, 584–85 (BIA 1978) (citing numerous decisions).

AEDPA § 440(d) amended INA § 212(c) to restrict significantly the availability of the waiver to criminal aliens:

[Section 212(c) relief is unavailable to an alien who] "is deportable by reason of having committed any criminal offense covered in [INA] section 241(a)(2)(A)(iii) [aggravated felonies, without regard to sentence served], (B) [controlled substance violations], (C) [certain firearm offenses], or (D) [miscellaneous national security offenses], or any offense covered by section 241(a)(2)(A)(ii) [multiple crimes of moral turpitude] for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i) [crimes of moral turpitude]."

AEDPA § 440(d)(2), 110 Stat. at 1277 (as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, Div. C, Tit. III, Subtit. A, § 306(d), 110 Stat. 3009–546, 3009–612 (Sept. 30, 1996)).[3] Petitioners claim that the Board's application of AEDPA § 440(d) to their cases consti-

---

**2.** Although former INA § 212(c) appeared by its language to reach only aliens in exclusion proceedings, it had been held to apply to aliens in deportation proceedings as well. *See Francis v. INS,* 532 F.2d 268, 269, 273 (2d Cir.1976) (finding a literal interpretation of section 212(c) to violate the Equal Protection Clause); *Matter of Silva,* 16 I. & N. Dec. 26, 30 (BIA 1976) (adopting *Francis* nationwide).

**3.** The IIRIRA abolished the former distinction under the INA between exclusion and deportation proceedings and "combin[ed] the two into a new proceeding known as a 'removal proceeding.'" *Goncalves v. Reno,* 144 F.3d 110, 115 n. 2 (1st Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208

(1999). It has eliminated section 212(c) relief altogether for aliens in removal proceedings that commenced after April 1, 1997. *See* IIRIRA § 304(b), 110 Stat. at 3009–597 (repealing INA § 212(c), 8 U.S.C. § 1182(c)); *id.* § 309(c), 110 Stat. at 3009–625 to 3009–627 (providing generally that the IIRIRA does not apply in proceedings initiated prior to April 1, 1997). The IIRIRA replaced section 212(c) with a new form of discretionary relief called "cancellation of removal." *See id.* § 304(a)(3), 110 Stat. at 3009–587, 3009–594 to 3009–596 (adding new INA § 240A, 8 U.S.C. § 1229b). Petitioners' proceedings all began before April 1, 1997.

tutes improper retroactive elimination of discretionary relief from deportation, and ask this Court to require the BIA to consider their section 212(c) applications on the merits. The government does not dispute that petitioners would have been eligible for such relief under the pre-AEDPA section 212(c).

### B. Jurisdiction

The government initially opposed the petitions on the ground that this Court lacks subject matter jurisdiction under the judicial review provisions of the IIRIRA, §§ 306(a), (c), 309(c)(4), 110 Stat. at 3009–607 to 3009–612, 3009–626 to 3009–627, *amended by* Act of Oct. 11, 1996, Pub.L. No. 104–302, § 2, 110 Stat. 3656, 3657.

██ However, under the caselaw in this circuit, this Court has jurisdiction under the IIRIRA's judicial review provisions [4] to consider the "pure issue of law" presented by these petitions. *Goncalves v. Reno*, 144 F.3d 110, 113 (1st Cir.1998) (holding that, under the IIRIRA's judicial review provisions, federal district courts retain habeas jurisdiction pursuant to 28 U.S.C. § 2241 to resolve the issue of "whether Congress intended to make a particular provision of a statute retroactive"), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999).[5] Petitioners are all "in custody" for the purposes of § 2241 because they are subject to final orders of deportation.

4. Petitioners' cases are governed by the IIRIRA's transitional judicial review provisions, because the INS initiated their deportation proceedings prior to April 1, 1997, and because each of their deportation orders became administratively final after October 30, 1996. *See* IIRIRA § 309(c)(4), 110 Stat. at 3009–626 to 3009–627; *Henderson v. INS,* 157 F.3d 106, 117 (2d Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999).

5. A circuit split exists on this question. *See Sandoval v. Reno,* 166 F.3d 225, 238 (3d Cir. 1999) ("[B]ecause neither AEDPA nor IIRIRA contains a clear statement that Congress sought to eliminate habeas jurisdiction ..., we conclude that § 2241 survives the 1996 amendments [to the immigration laws, at least for certain statutory claims].");

*See, e.g., Almon v. Reno,* 13 F.Supp.2d 143, 144 n. 2 (D.Mass.1998).

### C. Retroactivity of AEDPA § 440(d)

#### 1. Goncalves and Its Progeny

The more difficult issue is to what extent Congress intended AEDPA § 440(d) to operate retroactively to preclude aliens like petitioners from applying for section 212(c) relief. The First Circuit has held that Congress did not intend to eliminate section 212(c) relief for aliens whose 212(c) applications were pending on the date of the AEDPA's enactment. *See Goncalves,* 144 F.3d at 113, 126, 133–34. *Goncalves* leaves many unanswered questions in its wake. The petitions before this Court require a determination as to whether AEDPA § 440(d)'s restrictions on eligibility for section 212(c) relief are applicable to aliens who were in deportation proceedings on the effective date of the AEDPA, April 24, 1996, but who had not yet filed their section 212(c) applications.

*Goncalves* determined that retroactive application of AEDPA § 440(d) to aliens whose section 212(c) applications were already pending on April 24, 1996, would "plainly" and impermissibly impair the statutory right to apply for waivers of deportation and "impose [ ] additional burdens on past [criminal] conduct." *Id.* at 130 (citing *Hughes Aircraft Co. v. United*

*Henderson,* 157 F.3d at 122 (holding that statutory claims "affecting the substantial rights of aliens of the sort that the courts have secularly enforced," such as retroactivity claims, continue to be cognizable on habeas review); *Lee v. Reno,* 15 F.Supp.2d 26, 32 (D.D.C.1998). *But see LaGuerre v. Reno,* 164 F.3d 1035, 1040 (7th Cir.1998) ("We conclude that for the class of [criminal] aliens encompassed by [the transitional judicial review provisions and delineated in section 440(d) of the AEDPA], judicial review by means of habeas corpus did not survive the enactment of [those provisions]."); *Richardson v. Reno,* 162 F.3d 1338, 1378 (11th Cir.1998) (holding that the IIRIRA "repeal[ed] § 2241 habeas jurisdiction over immigration decisions"), *petition for cert. filed,* 67 U.S.L.W. 3561 (U.S. Feb. 23, 1999) (No. 98–1361).

*States ex rel. Schumer,* 520 U.S. 939, 946–47, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997), and *Landgraf v. USI Film Prods.,* 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). Other courts have concurred. *See, e.g., Henderson v. INS,* 157 F.3d 106, 129 (2d Cir.1998) (holding, in the context of an alien in Goncalves's position, that AEDPA § 440(d) "does not apply to cases initiated before the date of its enactment" (citing *Goncalves,* 144 F.3d at 126)), *cert. denied,* —— U.S. ——, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999); *Farquharson v. INS,* 31 F.Supp.2d 403, 414 (D.N.J.1999) (finding that "AEDPA § 440(d) should not be applied to criminal aliens who filed applications for waivers before the statute was enacted" (citing cases)); *Perez v. Reno,* 18 F.Supp.2d 674, 682 (W.D.Tex.1998) (adopting *Goncalves* ). But *c.f. LaGuerre v. Reno,* 164 F.3d 1035, 1041 (7th Cir.1998) (summarizing in dicta the Seventh Circuit's holdings that AEDPA § 440(d) applies retroactively except when an alien has "conceded deportability in reliance at having a good shot at a waiver of deportability" (citing cases)).

Petitioners' cases are not directly governed by the *Goncalves* decision, which the First Circuit cautioned was a "narrow" holding applicable to "persons in Goncalves' position," *Goncalves,* 144 F.3d at 133. The government argues that *Goncalves* should be strictly limited to its facts and not extended to protect aliens whose cases the AEDPA interrupted before they reached the advanced stage of Goncalves. However, every other court in this district to consider this issue has concluded otherwise.

One approach has been to construe *Goncalves* to extend to aliens who did not file section 212(c) applications before April 24, 1996, but who nonetheless did, prior to the AEDPA's enactment, give the INS "unmistakable notice of their intention to seek such relief either in a writing or in a transcribed proceeding before an Immigration Judge." *Almonte v. Reno,* 27 F.Supp.2d 106, 109 (D.Mass.1998)

(Stearns, J.) ("[C]onfining *Goncalves* strictly to its facts, making section 212(c) relief available only to aliens whose petitions had been perfected as of [the] AEDPA's effective date, exalts form over substance, and is susceptible to an inequitable result...."). The petitioner in *Almonte* told an IJ at a hearing in January 1996 that he planned to apply for a section 212(c) waiver; the IJ set May 31, 1996, as the application deadline, and the alien filed his application on May 29. *See id.* at 106; *see also Ranglin v. Reno,* 27 F.Supp.2d 262, 268 (D.Mass.1998) (Young, J.) (remanding to the BIA for a merits determination a case in which the IJ authorized the petitioner to apply for a section 212(c) waiver in January 1996 and gave him until April 26, 1996, to file the application).

Other courts have taken a more expansive view and applied the *Goncalves* retroactivity analysis to "all persons against whom INS [had] commenced deportation proceedings, i.e., filed Orders to Show Cause, by the time of AEDPA's enactment," even though they had not yet filed or expressed an intent to file section 212(c) applications. *Machado v. INS,* 33 F.Supp.2d 88, 91–92 (D.Mass.1999) (Lasker, J.); *see also, e.g., Mattis v. Reno,* 44 F.Supp.2d 379, 381-384 (D.Mass.1999) (Young, J.); *McKenzie v. Reno,* No. 97–CV–11285–DPW, slip op. at 5 (D.Mass. Dec. 10, 1998) (Woodlock, J.). Two circuits have drawn a similar line in reliance on the reasoning in *Goncalves. See Sandoval v. Reno,* 166 F.3d 225, 241–42 (3d Cir.1999) (concluding that Congress did not intend AEDPA § 440(d) to apply to cases pending on the date of enactment); *Henderson,* 157 F.3d at 129–30 (broadly construing *Goncalves* to hold that AEDPA § 440(d) "does not apply retroactively to aliens whose *deportation or exclusion proceedings* were pending on the date of its enactment" (emphasis added)).

Another court took an even broader view, *Wallace v. Reno,* 24 F.Supp.2d 104 (D.Mass.1998) (Gertner, J.), when it held that the "presumption against retroactivity

... applies to bar the application of § 440(d) to aliens whose deportability rests on guilty pleas, entered prior to April 24, 1996." *Id.* at 112.

### 2. *The Petitioners*

■ The emerging consensus is that the presumption against retroactivity applies at least to all aliens who were in deportation proceedings on the effective date of the AEDPA. With these guiding principles in mind, I now turn to the petitioners here.

Mathews and Abreu–Santana, like the petitioners in *Almonte* and *Ranglin*, had clearly manifested their intention before April 24, 1996, to apply for discretionary relief from deportation, and they had received permission to do so. Relying on the deadlines proposed by their IJs, they filed their applications after the AEDPA's enactment. To avoid disrupting these petitioners' settled expectations simply on the basis of a technicality, I remand their cases to the BIA.

Petitioner Turavani is in a more difficult procedural position. He too was granted an opportunity to apply for section 212(c) relief before April 24, 1996, but the IJ considered his application abandoned because it was not filed in compliance with the deadline. Turavani's motion to remand on the abandonment issue had been pending before the BIA for three-and-a-half years when the AEDPA was enacted. In April 1997, the Board denied the motion on the ground that AEDPA § 440(d) rendered Turavani statutorily ineligible for section 212(c) relief.

In *Lee v. Reno*, 15 F.Supp.2d 26 (D.D.C.1998), the court extended the reasoning in *Goncalves* to cover a similarly situated petitioner whose 1994 motion to reopen to apply for section 212(c) relief was still pending before the BIA on April 24, 1996. *See id.* at 44–46 & n. 26 (holding that, although Lee's section 212(c) application had neither been "filed [n]or ... partially adjudicated" at the time of the AEDPA's enactment, Congress did not in-

tend AEDPA § 440(d) "to apply retroactively to motions to reopen and applications for waivers of deportation provided by pre-AEDPA § 212(c)"); *cf. Sandoval*, 166 F.3d at 228, 242 (holding that AEDPA § 440(d) did not apply retroactively to an alien who had not yet applied for section 212(c) relief and whose appeal of an IJ's denial of a stay of deportation to allow him to do so was pending before the BIA when the AEDPA was enacted).

The First Circuit's recent holding in *Wright v. Ouellette*, 171 F.3d 8 (1st Cir. 1999), does not change this conclusion. In *Wright*, the alien had already had "full agency consideration of his § 212(c) application" on the merits by both an IJ and the BIA, *id.* at 10–11, and the court rejected his argument that application of AEDPA § 440(d)'s cutoff of section 212(c) relief to his motion to reopen presented a retroactivity problem, *see id.* at 11–12 (explaining that because Wright's deportation order, which was "issued after full BIA consideration of [his] application, was final, the motion to reopen is more akin to starting a new proceeding" than to extending the original one). Because there has been no agency consideration of the section 212(c) relief, I remand to the BIA to address squarely the motion to remand, including the issue of abandonment.

Lastly, petitioner Gomes was in deportation proceedings prior to April 24, 1996. Permitting Gomes to be evaluated for discretionary relief from deportation pursuant to the pre-AEDPA section 212(c) answers the charge that hinging the retroactivity analysis on the date of a section 212(c) application penalizes aliens for "random acts of administrative scheduling." *Wallace*, 24 F.Supp.2d at 113. Although INS regulations appear to allow an alien to file an application for section 212(c) relief "at any time," *id.* at 113 n. 11 (citing 8 C.F.R. § 212.3(b)), "the far more ordinary course is for the recipient of an Order to Show Cause to wait until the deportation hearing before an IJ to

notice his intent to apply for, and/or lodge, an actual application," *Machado*, 33 F.Supp.2d at 90 n. 4; *cf. Wallace*, 24 F.Supp.2d at 113 & n. 11 (noting that, in 1994, the INS interpreted 8 C.F.R. § 212.3(b) to prohibit aliens from requesting section 212(c) waivers "prior to the actual institution of deportation proceedings" (quoting 71 Interpreter Releases 949 (July 18, 1994)) (internal quotation marks omitted)).

Given this practice, it would be unfair to hold that Gomes, who was in deportation proceedings in 1994, is ineligible for a waiver of deportation simply because his first substantive hearing before an IJ—his first real opportunity to apply for section 212(c) relief—was scheduled after the enactment of the AEDPA. *See id.* at 113 (finding that, at least in 1994, "[t]he date on which a permanent resident filed for § 212(c) relief was usually determined by a random set of facts outside the resident's control"); *see also Almonte*, 27 F.Supp.2d at 109 (acknowledging that the holdings in *Goncalves* and *Almonte* are subject to the "criticism that the likelihood of an alien's [having applied for relief or] having made his intention to seek relief known is largely dependent on the vagaries of the commencement of a deportation proceeding"). I therefore remand his case to the BIA for a merits determination.

### D. *Equal Protection Clause*

Petitioners also contend that AEDPA § 440(d) violates the Equal Protection Clause because it applies by its terms only to "deportable" aliens and preserves section 212(c) relief for aliens in exclusion proceedings. Because I hold that AEDPA § 440(d) does not apply to any of the petitioners, I need not reach their equal protection claim.

### ORDER

The petitions for writs of habeas corpus (Docket Nos. *Mathews* 1, *Turavani* 1, *Gomes* 1, & *Abreu–Santana* 1) are *AL-* *LOWED.* The above-captioned cases are remanded to the BIA.