Donna Anne **REEVES**, Petitioner,

v.

Janet **RENO** and Carol Jenifer, Respondent.

No. 97–76083.

United States District Court, E.D. Michigan, Southern Division.

Aug. 20, 1999.

William W. Swor, Detroit, MI, for plaintiff.

Elizabeth J. Larin, Asst. U.S. Atty., Detroit, MI, for defendant.

### OPINION AND ORDER GRANTING WRIT OF HABEAS CORPUS[1]

TARNOW, District Judge.

### I. *Introduction*

Petitioner Donna Anne Reeves ("Reeves" or "Petitioner") is a legal permanent resident of the United States who has been ordered deported because she had been convicted of eight counts of violating the controlled substances laws of Michigan. The Board of Immigration Appeals ("BIA") determined that she was statutorily ineligible for § 212(c) discretionary relief from deportation pursuant to an amendment to § 212(c) effectuated by § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–32, Tit. IV, Subtit. D, § 440(d), 110 Stat. 1214, 1277 (Apr. 24, 1996). Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on the ground that Congress did not intend § 440(d) of the AEDPA to apply retroactively to aliens in pending deportation proceedings at the time of its enactment.

For the reasons set forth below, the Court grants Petitioner a writ of habeas corpus under 28 U.S.C. § 2241.

### II. *Facts and Procedural History*

Reeves, a native and citizen of Great Britain, emigrated to the United States on August 17, 1974, as the child of an alien, who was admitted as a fiancee of an American citizen. She became a lawful permanent resident in the United States on Octo-

---

1. Staff Attorney Mary Beth Collery provided quality research assistance.

ber 25, 1974 and has resided in the United States continuously since that date. Reeves has been married to and divorced from an American citizen. She has three minor children who are American citizens and with whom she currently resides in the City of Detroit. Reeves is employed as a restaurant manager in Novi, Michigan.

On January 21, 1986, Reeves was convicted in Recorder's Court for the City of Detroit of possession of codeine and sentenced to ten days of community service. On April 11, 1988, Reeves was convicted of eight counts of violating the controlled substances laws of Michigan in Recorder's Court. She appealed the conviction. On June 25, 1992, after remand from the Court of Appeals, she was sentenced to three to thirty years in prison. Reeves was paroled in 1994 and released from parole on June 7, 1996.

On May 26, 1988, based upon her January 21, 1986 conviction, the INS commenced deportation proceedings against Reeves, pursuant to Section 241(a)(11) of the Immigration and Nationality Act ("INA"). On or about March 13, 1989, Reeves's counsel filed a request for a waiver pursuant to § 212(c) of the INA. The deportation proceedings were administratively closed on February 5, 1992 without adjudication to await a decision in Reeves's appeal of her state court criminal convictions.

On October 20, 1992, the INS filed additional charges of deportability, alleging that Reeves had been convicted of eight counts of violating the controlled substances laws of Michigan. On December 21, 1995, the INS moved to recalendar the matter. On December 5, 1996, a hearing was conducted before an Immigration Judge. At the hearing, Reeves admitted the factual allegations and conceded the grounds for deportation, but requested the opportunity to pursue her application for relief under INA § 212(c). The Immigration Judge found Reeves deportable and further found that, based upon the AEDPA, Reeves was not entitled to seek § 212(c) relief. On September 18, 1997, the BIA affirmed the decision of the Immigration Judge.

On November 3, 1997, the INS issued a letter to Reeves requiring her to report for deportation to England on January 6, 1998. Reeves filed the pending application for a writ of habeas corpus on December 15, 1997. On that same date, Reeves also filed an Emergency Motion for Temporary Restraining Order to prevent Respondents from executing their deportation order against Reeves. On December 30, 1997, a hearing was held before this Court regarding the Emergency Motion.[2] Following the hearing, this Court issued an Order for Temporary Stay of Proceedings and for Temporary Injunction granting a stay of the proceedings for ninety days and a ninety-day temporary injunction during which the INS was enjoined from deporting Reeves and from taking her into custody.

On January 5, 1999, this Court issued an Order Regarding Jurisdiction and Order to Show Cause, holding that this Court has subject matter jurisdiction over this matter and ordering Respondents to show cause why a writ should not issue in this matter. The Court also ordered that, until further Order of this Court, Respondents and the agents and employees of the INS under their authority are restrained and enjoined from deporting Petitioner.

On March 23, 1999, the Court issued an Order to File Supplemental Briefs requiring the parties to file supplemental briefs addressing the impact, if any, of the significant body of case law regarding the retroactivity of § 440(d) that has developed since the parties last filed briefs in this

---

**2.** The Honorable Paul D. Borman presided over the hearing. Pursuant to Administrative Order No. 98–AO–023, this matter has been reassigned to The Honorable Arthur J. Tarnow.

matter on Petitioner's eligibility for § 212(c) discretionary relief.

Respondents filed their supplemental brief on May 24, 1999. Although the date set by the Court to do so has long since expired, Petitioner has not yet filed a supplemental brief. However, because the Court determines that such a brief is not necessary to adjudicate this matter, the Court will proceed to the merits of the Petition.

## III. *Discussion*

### A. *Retroactivity of AEDPA § 440(d)*

Under the INA, any alien convicted of an aggravated felony or an offense related to controlled substances is subject to deportation. 8 U.S.C. §§ 1227(a)(2)(A)(iii) & (a)(2)(B)(i). Prior to the passage of AEDPA § 440(d), an alien who was a lawful permanent resident of the United States who was subject to deportation because of a criminal conviction could apply to the Attorney General for discretionary relief from deportation under INA § 212(c) if the lawful permanent resident had not been "convicted of one or more aggravated felonies" for which he or she had served "a term of imprisonment of at least 5 years." 8 U.S.C. § 1182(c) (1995) (repealed).[3]

AEDPA § 440(d) amended INA § 212(c) to categorically bar aliens convicted of certain crimes, including Reeves's, from obtaining a § 212(c) waiver.[4] The

BIA denied Petitioner's application for § 212(c) discretionary relief because it held that the amended § 212(c) rendered her ineligible for such relief. Petitioner claims that the BIA's denial violated her due process rights because it was an impermissible retroactive application of § 440(d) and violates the Equal Protection Clause. The Sixth Circuit has not yet addressed this issue, but the overwhelming majority of its sister circuits that have addressed the issue have held that § 440(d) does not apply retroactively. *See Mayers v. INA,* 175 F.3d 1289 (11th Cir. 1999); *Sandoval v. Reno,* 166 F.3d 225 (3rd Cir.1999); *Goncalves v. Reno,* 144 F.3d 110 (1st Cir.1998); *Henderson v. INS,* 157 F.3d 106 (2nd Cir.1998). For the reasons set forth below, the Court concurs with the majority view that § 440(d) does not apply retroactively.

The Board of Immigration Appeals based its decision that § 440(d) applied retroactively to bar Reeves from § 212(c) relief on the Attorney General's opinion in Matter of Soriano, in which the Attorney General determined that AEDPA § 440(d) was to be applied retroactively to all pending cases regardless of the date of the § 212(c) waiver application. *See* Matter of Soriano, Int. Dec. No. 3289 (Op. Att'y Gen. Feb. 21, 1997). Respondent argues that the Attorney General's decision in Soriano is entitled to deference pursuant to *Chevron, U.S.A., Inc., v. Natural Resources*

---

**3.** Before amendment by AEDPA § 440(d), INA § 212(c) provided:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General ... [Eligibility for such discretionary relief] shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years. 8 U.S.C. § 1182(c) (1995) (repealed). Although this provision specifically refers only to aliens in exclusion proceedings, courts universally have held it likewise applicable to

permanent resident aliens facing deportation. *See, e.g., Hussein v. INS,* 61 F.3d 377, 379 (5th Cir.1995).

**4.** Section 212(c), as amended by AEDPA § 440(d), provides, in pertinent part:

Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General ... This subsection shall not apply to an alien who is deportable by reason of having committed [certain classes of criminal offenses, including that committed by Petitioner] ... 8 U.S.C. § 1182(c).

*Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Therefore, the first question the Court must address is whether the Court is bound to defer to the Attorney General's Soriano opinion.

In *Chevron,* the Supreme Court established a two-step analysis to determine whether deference should be afforded an administrative agency's interpretation of a statute it administers. *Id.* at 842–43, 104 S.Ct. 2778. First, a court must determine whether "the intent of Congress is clear" as to "the precise question at issue." *Id.* at 842, 104 S.Ct. 2778. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Id.* n. 9. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. 2778. As explained *infra,* applying "traditional tools of statutory construction," this Court determines that Congress clearly did not intend AEDPA § 440(d) to apply retroactively to an alien in Reeves's circumstances. Accordingly, "that is the end of the matter" and this Court therefore owes no deference to the Attorney General's opinion in Soriano. *Id.* ("If the intent of Congress is clear, that is the end of the matter . . .").

The Supreme Court's decision in *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), that a presumption exists against retroactive application informs the Court's inquiry into Congress's intent as to the temporal application of § 440(d). "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence" because "[e]lementary concerns of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf v. USI Film Products,* 511 U.S.

244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The Supreme Court in *Landgraf* established the analytical framework for determining whether Congress intended a newly enacted statutory provision to apply retroactively:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches us that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280, 114 S.Ct. 1483.

To determine whether Congress intended § 440(d) to apply retroactively, the Court is guided by "traditional tools of statutory construction" which include examination of the statutory "language itself, the specific context in which the language is used, and the broader context of the statute as a whole," *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997), as well as the statute's legislative history. *See Mayers v. INS,* 175 F.3d 1289 (11th Cir.1999). Using these methods of statutory construction, the Court concludes that Congress clearly did not intend § 440(d) to apply retroactively. *Accord Mayers,* 175 F.3d 1289; *Sandoval v. Reno,* 166 F.3d 225 (3rd Cir. 1999); *Goncalves v. Reno,* 144 F.3d 110 (1st Cir.1998); *Henderson v. INS,* 157 F.3d 106 (2nd Cir.1998); *Farquharson v. INS,* 31 F.Supp.2d 403 (D.N.J.1999); *Mathews v. Reno,* 52 F.Supp.2d 195 (D.Mass.1999); *Gutierrez–Perez v. Fasa-*

*no,* 37 F.Supp.2d 1166 (S.D.Cal.1999); *Homayun v. Cravener,* 39 F.Supp.2d 837 (S.D.Tex.1999).

In *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), the Supreme Court applied the *Landgraf* framework to determine whether a different provision of the AEDPA applied retroactively. The Supreme Court, in *Lindh,* addressed the question whether the AEDPA provision heightening the standards for granting § 2254 habeas corpus relief in noncapital cases applied retroactively. In holding that the heightened standards of review did not apply retroactively, the Court stated that to determine "a statute's temporal reach generally, our normal rules of construction apply." *Id.* at 326, 117 S.Ct. 2059. Notably, encompassed within these normal rules of statutory construction was the rule of negative implication. That is, "where Congress expressly provided for retroactive application in one provision of AEDPA, the Court determined that silence in another provision created 'negative implication' that Congress intended prospective application when it had not expressly provided for retroactive application." *Mayers v. United States Department of INS,* 175 F.3d 1289, 1302 (11th Cir.1999) (*citing Lindh,* 521 U.S. at 330–38, 117 S.Ct. 2059). "More specifically, the Court found that Congress did not intend AEDPA §§ 101–06 to be applied retroactively not because the statute expressly so stated, but because Congress deliberately omitted retroactive language from those sections while including it in other sections . . ." *Farquharson v. INS,* 31 F.Supp.2d 403, 415 (D.N.J.1999).

Application of the negative implication doctrine to the pending case reveals that Congress did not intend § 440(d) to apply retroactively. Several of AEDPA's immigration provisions contain explicit retroactivity language. For example, AEDPA § 413, which makes alien terrorists ineligible for several different forms of relief from deportation, includes a specific provision making it applicable to "applications filed before, on, or after [the date of enactment] if final action has not been taken on them before such date." AEDPA § 413; *see also Goncalves,* 144 F.3d at 128. Additionally, AEDPA § 401(f) is expressly retroactive. As the First Circuit observed:

> If Congress thought that such restrictions would as a matter of course be applied to pending cases, . . . then [the provisions explicitly providing for retroactive application] would have accomplished nothing. In *Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) the Court noted "the cardinal principle of statutory construction that it is our duty to give effect, if possible, to every word of a statute." *Id.* at 173, 117 S.Ct. at 1166 . . . This is particularly true when there is a contrast in language between two sections of the same statute.

*Goncalves,* 144 F.3d at 129.

Given the negative implication analysis applied by the Supreme Court in *Lindh* and the inclusion of express retroactive mandates in other AEDPA sections dealing with aliens' rights, the Court joins the majority of its sister circuits that have addressed the issue in determining that the text of AEDPA demonstrates that Congress did not intend § 440(d) to apply retroactively to persons in Petitioner's position.

■ The legislative history supports the Court's conclusion that Congress did not intend AEDPA's § 440(d) to apply retroactively. Respondents argue that the legislative history supports the contrary conclusion. As support for this argument, Respondents quote a speech preceding passage of the Senate version of the bill in which Senator Abraham stated, in part:

> These expedited deportation procedures will apply to the almost half a million aliens currently residing in this country who are deportable because they have been convicted of committing serious felonies.

Respondents' Supplemental Brief at p. 6, citing 141 Cong.Rec. S7822–23, 1995 WL 338025 (June 7, 1995). Respondents, however, fail to recognize that the Senate version of the bill was not the version ultimately passed by Congress. In *Goncalves v. Reno,* the First Circuit details the relevant legislative history of the AEDPA generally and § 440(d) specifically, 144 F.3d 110, 131–33 (1st Cir.1998), *cert. denied* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999). The legislative history confirms this Court's conclusion that Congress did not intend § 440(d) to be applied retroactively. The Senate's version of AEDPA § 440(d) had a provision which expressly made the amended INA § 212(c) applicable to pending cases.[5] The comparable section of the House version of the bill did not contain any "effective date" for the amendment regarding § 212(c) relief. The House version did, however, contain explicit "effective date" subsections in its provisions limiting relief for alien terrorists which made those restrictions retroactive. *Goncalves,* 144 F.3d at 132 (*citing* H.R. 2703 §§ 611(b), 612(f), at 142 Cong.Rec. H2293, H2294 (daily ed. Mar. 14, 1996)). Following a bipartisan conference to reconcile the competing versions of the bill, a committee version of the bill was passed which notably did not contain the Senate bill's original language making the restrictions on § 212(c) relief retroactive. *Id.* As the Supreme Court has stated, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS v. Cardoza-Fonseca,* 480 U.S. 421, 432, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (citations omitted). Thus, the legislative history confirms this Court's conclusion that Congress did not

intend § 440(d) to apply retroactively to persons in Petitioner's position.

### B. *Equal Protection Claim*

Because the Court concludes that § 440(d) does not apply retroactively to bar Reeves from applying for a § 212(c) discretionary waiver, the Court does not reach the merits of her equal protection claim.

### C. *Attorney's Fees*

In her petition, Reeves asks the Court to grant her attorney's fees and costs. Although Reeves fails to provide any statutory support for her request for attorney's fees, the Court will presume that she makes the request under the Equal Access to Justice Act ("EAJA"). 28 U.S.C. § 2412(d)(1)(A), which provides limited exceptions to the federal government's sovereign immunity in certain civil litigations.

The EAJA allows a court to award fees and costs to a prevailing party in civil litigation against the United States or one of its agencies if the court finds that the government's position was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The government's position is "substantially justified" if it "has a reasonable basis in law and fact." *Pierce v. Underwood,* 487 U.S. 552, 566, n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). This Court holds that although the government's position was incorrect it was not unjustified. As the government pointed out in its Supplemental Brief, the Sixth Circuit has not yet ruled on the issue of whether § 440(d) is retroactive, the Seventh Circuit has decided the issue in accord with the position espoused by the government in this case, and the Attorney General's decision in Matter of Soriano supports the government's position. *See LaGuerre v. Reno,* 164 F.3d 1035 (7th

---

5. The "effective date" provision contained in the Senate version of the bill stated:

> The amendments made by this section [*i.e.,* § 303 of the Senate bill, which became § 440(d) ] shall take effect on the date of

the enactment of this Act and shall apply to cases pending before, on, or after such date of enactment.

*Goncalves,* 144 F.3d at 131–32 (*quoting* 144 Cong.Rec. S7559 (daily ed. May 25, 1995)).

Cir.1988). Accordingly, Petitioner is not entitled to attorney's fees and costs.

### IV. *Conclusion*

For the foregoing reasons, the Court **GRANTS** Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 to the extent that Petitioner is allowed to apply for relief from deportation under INA § 212(c), without regard to the effect of AEDPA on § 212(c). The Court's stay of deportation is **CONTINUED** until Petitioner receives her § 212(c) hearing, at which time the stay will be vacated.